IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JOSEPH PETERSON,** and
**TAMI K. PETERSON**,

      Plaintiffs,

    v.

**DIRECT COAST TO COAST, LLC**
and **SELECTIVE TRANSPORTATION CORPORATION**,

      Defendants.

Case No. 3:14-cv-00284-MO

OPINION AND ORDER

**MOSMAN, J.**,

Plaintiffs' have prevailed at trial and now seek attorney fees and costs [123]. Defendants move for a judgment notwithstanding the verdict, a new trial, or to amend the judgment [129]. For the reasons set forth below I GRANT Plaintiffs' motion for attorney fees and costs [123]. I DENY Defendants' Motion [129].

    I.    Attorney fees

I award attorney fees under ORS § 20.105 and award only the amount Plaintiffs had to pay under their contract with counsel.

        a.    Whether to award

Oregon does not recognize attorney fees as special damages for a slander of title claim. *Hubbard v. Scott*, 85 Or. 1, 13 (1917). Despite this, Plaintiffs ask for attorney fees arguing *Hubbard*'s reasoning rested on the fact that the majority of jurisdictions did not award attorney fees as special damages at the time the case was decided. One hundred years later, the majority

1    Opinion and Order

of jurisdictions have changed their position and most award attorney fees. Plaintiffs ask that I follow the current majority rule, as the *Hubbard* court did, and award attorney fees. I decline to do so. Oregon law is clear that attorney fees are not allowed and it would be inappropriate to award them here.[1]

Oregon does allow the award of attorney fess to a party if its opponent asserted a defense with "no objectively reasonable basis for asserting [the] defense." OR. REV. STAT. ANN. § 20.105 (West). A defense lacks an objectively reasonable basis only if it is "entirely devoid of legal or factual support." *Olson v. Howard,* 237 Or. App. 256, 269 (2010). This can occur either at the time the defense is asserted or, "in light of additional evidence or changes in the law," as litigation proceeds. *Dimeo v. Gesik,* 197 Or. App. 560, 562 (2005). The court must inquire whether there is "at least some support to each element of the claim." *Lenn v. Bottem*, 221 Or.App. 241, 249 (2008). Weak evidence, or evidence rebutted by other evidence in the record, suffices to meet this threshold. *See Scott v. Harold Barclay Logging Co., Inc.,* 162 Or.App. 228, 231 (1999). A party's testimony alone, however, is insufficient to support a claim as objectively reasonable where other evidence directly contradicts that testimony and thus demonstrates that party's position was untenable. *Kraft v. Arden*, 2009 WL 73869, at *4 (D. Or. Jan. 8, 2009).

Defendants presented a defense with no objectively reasonable basis. At trial, Defendants argued Plaintiffs failed to mitigate their damages because they did not remove the lien themselves. Oregon law outlines that the release of lien may be accomplished by a judgment creditor creating a release of lien document signed by the creditor and filed with the court administrator. Testimony at trial showed Mrs. Peterson attempted to remove the lien and

---

[1] In the alternative, Plaintiffs ask that I certify the question of whether *Hubbard* is still good law to the Oregon Supreme Court. Because there is already controlling precedent from Oregon, certification is unavailable. *See* OR. REV. STAT. ANN. § 20.200 (West). Therefore I DENY Plaintiffs' Motion to Certify Question to the Oregon Supreme Court [146].

was told she could not do so without a release from the creditor. The only other way to remove a lien is to obtain a court order a method Plaintiffs pursued by filing this case. Defendants produced no evidence at trial to support the proposition that Plaintiffs could have done more. There was neither a legal nor a factual basis for the assertion that Plaintiffs could remove the lien themselves. For that reason, I find the defense qualifies as objectively unreasonable and award attorney fees to Plaintiff.

    b. Amount of Attorney Fees

Plaintiffs seek $164,958.50 in attorney fees. Defendants argue that amount is too high both because Plaintiffs spent an unreasonable number of hours on the case and because the *Kerr* factors favor a downward adjustment of Plaintiffs' lodestar figure.[2] After taking into account the factors outlined below, I adjust Plaintiffs' request and award $155,617.

    i. Reasonable hours

Defendants point out three instances in particular that they believed Plaintiffs overbilled. Plaintiffs concede one was a mistake and adequately explain the other two. The amount requested has been adjusted according to Plaintiffs' initial mistake.

    ii. *Kerr* factors

The parties primarily address how attorney fees are calculated under federal law applying the *Kerr* factors. However, the current case is brought under Oregon law which provides its own set of factors to apply to attorney fees. For attorney fees granted under ORS 20.105, ORS 20.075

---

[2] In addition, Defendants ask for additional discovery if attorney fees are to be awarded. Attorney fees may be awarded based on the affidavits of counsel so long as they are "sufficiently detailed to enable the court to consider all the factors necessary in setting the fees." *Henry v. Gill Indus., Inc.,* 983 F.2d 943, 946 (9th Cir.1993). Plaintiffs' submissions were sufficiently detailed here. Indeed, Defendants, on the current record, were able to challenge the number of hours Plaintiff worked in three instances.

outlines the relevant factors for determining a reasonable fee. *Williams v. Salem Women's Clinic*, 245 Or. App. 476, 483 (2011). Under that statute I must consider first:

> a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
> (c) The fee customarily charged in the locality for similar legal services.
> (d) The amount involved in the controversy and the results obtained.
> (e) The time limitations imposed by the client or the circumstances of the case.
> (f) The nature and length of the attorney's professional relationship with the client.
> (g) The experience, reputation and ability of the attorney performing the services.
> (h) Whether the fee of the attorney is fixed or contingent

OR. REV. STAT. ANN. § 20.075(2) (West).

In applying the factors, I note that while a slander of title claim is not particularly novel, it is rarely litigated. In addition, Plaintiff has provided evidence counsel's firm was at capacity and gave up doing other cases to pursue the present case. Defendants do not dispute the customary locality fee applied by Plaintiffs in calculating their attorney fees. This was a one time relationship between Plaintiffs and their counsel, and the present counsel did not even join this case until after discovery concluded. The arrangement between the parties was a mixed fee, with Plaintiffs agreeing to a hybrid hourly and contingent fee arrangement of $175 per hour plus 20 percent of the jury verdict.[3]

In addition to the factors above, Oregon law instructs me to look at the behavior of the parties including:

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
> (b) The objective reasonableness of the claims and defenses asserted by the parties.

---

[3] Under this arrangement, the amount for attorney fees would be $155,617 rather than the $165,538.50 Plaintiffs are requesting.

> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
> (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
> (g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.
> (h) Such other factors as the court may consider appropriate under the circumstances of the case.

OR. REV. STAT. ANN. § 20.075(1) (West).

All of these factors cut against Defendants for their unreasonable legal position and intransigence in the proceedings. Some examples, just from the most recent motions practice, include: Objecting to paying for a transcript when a free condensed expert deposition transcript was provided (but ignoring that free transcript was a bonus for paying for the transcript, and would not have been obtained otherwise); objecting to witness travel expenses (but ignoring that "witness fees, including a daily attendance fee and travel expenses as set forth in 28 USC § 1821, are taxable as costs under 28 USC § 1920(3) and FRCP 54(d)(1).") *Kibbee v. City of Portland*, 2000 WL 1643535, at *3 (D. Or. Oct. 12, 2000) (citation omitted); objecting to printing (but ignoring 28 USC § 1920(3) "fees for printing"); objecting to costs for making materials to be used in cases (but ignoring that 28 USC § 1920(4) "has been interpreted to include all types of demonstrative evidence, including photographs and graphic aids.") *Id* (citations omitted). As explained above, Defendants' proffered mitigation defense was unreasonable. The award of attorney fees would thus deter meritless defenses. As to the Defendants' diligence in the case, Mr. Horowitz ignored the pre-trial filing schedule without notifying opposing counsel or the court, and while he offered an excuse, it was a thin one at best. In addition, Mr. Horowitz was rebuked for his demeanor during the course of the trial. Taken

together both sets of factors indicate awarding an amount equivalent to the full amount of attorney fees would be appropriate in this case.

While the Oregon factors suggest the base amount may be reasonable, I am concerned by the difference between what the Plaintiffs paid their counsel and what is being sought in this motion. Calculated using the attorney's normal rates rather than the rates of the contract, the award Plaintiffs seek is $10,000 higher than what they actually contracted to pay their attorneys. To avoid any improper windfall, I place special importance on Plaintiffs' fee arrangements and award the $155,617 of actual cost to the Plaintiffs for hiring their attorneys, rather than $165,538.50 Plaintiff's counsel would have received had the fee arrangement been otherwise.

II. Costs

Federal Rule of Civil Procedure 54(d) provides "costs . . . should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). "Rule 54(d) creates a presumption for awarding costs to prevailing parties; the losing party must show why costs should not be awarded." *Save Our Valley v. Sound Transit,* 335 F.3d 932, 944 945 (9th Cir. 2003). "A district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Id.* at 945.

Plaintiffs seek $13,639.69 in costs. Defendants raise three substantive issues. Each is addressed below.

a. Expert witness

Defendants have not paid Dr. Patten, an expert that Defendants deposed as they must under FRCP26(b)(4)(E). They owe him $2,040.71. Defendants argue both that the amount is unreasonable and that the expert's work preparing for the deposition is not compensable.

The Federal Rules of Civil Procedure provide little guidance on whether "time spent in responding to discovery" includes an expert's time spent in preparation for a deposition. *See* FED. R. CIV. P. 26(b)(4)(C)(i). Courts are divided on whether Rule 26(b)(4)(C)(i) permits compensation for the time an expert spends in preparation for a deposition. *Compare, e.g.*, *Lent v. Fashion Mall Partners,* 223 F.R.D. 317, 318 (S.D.N.Y. 2004) ("Rule 26(b)(4)(C) clearly contemplates remuneration for time spent responding to discovery requests, which would include reasonable preparation for a deposition."), *and Collins v. Village of Woodridge,* 197 F.R.D. 354, 356 58 (N.D. Ill. 1999) (finding preparation time compensable regardless of complexity), *with U.S. ex rel. Fago v. M & T Mortgage Corp.,* 238 F.R.D. 3, 15 (D.D.C. 2006) (holding that the circumstances of the individual case must be examined and declining reimbursement where issues not complex, experts were deposed within three months of production of their reports, and moving party offered no other compelling reasons), *and M.T. McBrian v. Liebert Corp.,* 173 F.R.D. 491, 493 (N.D. Ill. 1997) (refusing to include preparation time in "reasonable fee" calculation since case was not complex and there was not a considerable lapse of time between expert's work and deposition). Most courts have held in the affirmative. *See, e.g.*, *Magee v. Paul Revere Life Ins.,* 172 F.R.D. 627 (E.D.N.Y. 1997) (citations omitted). Two district courts in the Ninth Circuit have considered the issue and both held preparation time for a deposition could be compensable. *All Cities Realty, Inc. v. CF Real Estate Loans, Inc.*, 2008 WL 10594412, at *5 (C.D. Cal. Mar. 14, 2008); *Mock v. Johnson*, 218 F.R.D. 680, 683 (D. Haw. 2003). I join them in finding the plain language of Rule 26(b)(4)(C)(i), which permits recovery for time spent in responding to discovery, can encompass time spent by an expert witness in deposition preparation.

Courts that do award time spent in deposition preparation have made a point not to award time spent in trial preparation. To avoid this, I consider the amount of time the expert claims and its proximity to the deposition. Here, Dr. Patten's preparation happened immediately before his deposition and more than a month in advance of trial. Dr. Patten totaled 2.9 hours .75 hours two days before the deposition, .66 hours one day before and 1.5 hours the day of his deposition. The deposition itself was 5.5 hours. The timing indicates Dr. Patten was preparing for the deposition, not the trial, and the hours spent on preparation are reasonable compared to the hours of deposition time.

As to reasonableness of his overall fee, what constitutes a "reasonable fee" for purposes of Rule 26(b)(4)(C) lies within the Court's sound discretion. *Edin v. Paul Revere Life Ins. Co.*, 188 F.R.D. 543, 545 (D. Ariz. 1999). There is no mandated Ninth Circuit test, but courts across the country have applied a seven part test evaluating: (1) the witness's area of expertise; (2) the education and training required to provide the expert insight which is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to assist the court in balancing the interests implicated by Rule 26. *Edin,* 188 F.R.D. at 546; *U.S. Energy Corp. v. NUKEM, Inc.*, 163 F.R.D. 344 (D. Colo. 1995); *Goldwater v. Postmaster General of the United States,* 136 F.R.D. 337 (D. Conn. 1991). Plaintiffs' expert is a Ph.D. who has dedicated himself to cranberry research. The amount sought here is the same amount the expert charged Plaintiffs: $125 per hour for preparation work and $200 per hour for the deposition. These rates for experts have previously been found to be reasonable. *Head v.*

*Glacier Nw., Inc.*, 2006 WL 1222650, at *2 (D. Or. Mar. 24, 2006). As such, I find Dr. Patten's expert fees are reasonable and award them as costs.

    b. Computer Expenses

Plaintiffs include computer research expenses under the bill of costs, but argue the expenses can also be viewed as a "component of attorney fees." Neither argument is availing.

As costs, they cannot be awarded. *Chevron U.S.A., Inc. v. Pelican Butte Oil, LLC*, 2011 WL 1398932, at *4 (D. Or. Jan. 31, 2011) (computer costs generally considered by the court to be overhead and therefore not properly considered costs that may be awarded); *Frederick v. City of Portland,* 162 F.R.D. 139, 144 (D. Or. 1995); *Ringcentral, Inc. v. Quimby,* 711 F.Supp.2d 1048, 1066 (N.D. Cal. 2010); *see also U.S. v. Merritt Meridian Constr. Co.*, 95 F.3d 153, 172 (2nd Cir. 1996) ("computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost"); *Jones v. Unisys Corp.*, 54 F.3d 624, 633 (10th Cir. 1995) (computer research costs not statutorily authorized under 28 U.S.C. § 1920); *Standley v. Chilhowee R IV School Dist.,* 5 F.3d 319, 325 & n. 7 (8th Cir. 1993) (internal citation omitted) (computer costs part of the attorneys' fees and not to be taxed separately).

The Ninth Circuit has, at times, allowed computer costs to be reimbursed as attorney fees noting "neither tradition nor statutory usage distinguishes computer-based legal research costs from attorney's fees." *Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (holding computer expenses as "attorney's fees" under § 1132(g)(2)(D) [ERISA]"). Oregon courts have not yet considered whether they are allowed as a component of attorney fees. *Yuan Chou v. Farmers Ins. Exch.*, 260 Or. App. 564, 568 (2014) (holding "we need not address whether computer-assisted research expenses might

be recoverable as attorney fees" but acknowledging they had been awarded in a different case under the FCRA).

Importantly, even if computer research expenses were appropriate to award as attorney fees, Plaintiffs would have failed to make the showing needed to be awarded them. A party must have shown it was the "prevailing practice in the local community" to bill clients for computer charges in addition to the hourly fee that makes up the general attorney fees. *Trustees* 460 F.3d at 1259. Plaintiffs have not done so here. The combination of Plaintiffs moving for the expenses as a cost; Oregon courts having yet to recognize them as an aspect of attorney fees; and Plaintiffs' failure to show that it is not an impermissible double capture (i.e. charging computer fees separately and also including them in the hourly rate of the attorney) suggests that reimbursement for computer expenses as attorney fees is inappropriate here. Plaintiffs are not awarded computer expenses either as costs or attorney fees.

    c. Expert costs

Plaintiffs argue they are entitled to expert costs as special damages. Plaintiffs offer nothing to suggest Oregon allows these costs as special damages in a slander of title case. To the extent Plaintiffs analogize expert costs to attorney fees, their argument is connected to their arguments for attorney fees in conjunction with a slander of title claim rather than the Oregon statute regarding attorney fees I have applied in this case. Because I have found Oregon does not allow attorney fees as special damages in a slander of title case, I cannot find expert costs appropriate as a component of attorney fees under special damages in such a case. For that reason, I do not award Plaintiff expert costs.

Plaintiff requested costs in the amount of $13,114.70. As I have found computer research and expert fees are unavailable, I award costs in the amount of $7,363.10.

I. Motion for Judgment Notwithstanding the Verdict, for New Trial, or to Amend Judgment

a. Judgment Notwithstanding the Verdict/Renewed Judgment as Matter of Law

Judgment as a matter of law is appropriate "only if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 510 (9th Cir. 2004). When evaluating such a motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). Defendants cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that they did not raise in their pre-verdict Rule 50(a) motion. *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).

i. Weight of the evidence arguments

Defendants present no new arguments in their post-trial motions as to the weight of the evidence at trial. Their primary argument is that the lien was appropriate when filed and, in the alternative, Plaintiffs presented no evidence that their loan was rejected because of the lien. As to the second argument, Plaintiffs provided direct evidence to the contrary in Exhibit 77, an email from the bank stating "because of the lien we would be unable to make the loan."

The argument that the lien was not false when published and therefore the elements of slander of title are not met was offered by Mr. Horowitz when he requested a directed verdict. I rejected it then and do so again now. Oregon law has recognized that "wrongful failure and refusal to remove a lien on plaintiff's property" can form the basis of a slander of title action. *Diamond v. Huffman*, 64 Or. App. 330, 332 (1983). Defendants' arguments fail.

ii. Failure to mitigate defense

Defendants argue Plaintiffs could have removed the lien, but failed to do so. Defendants presented this argument to the jury and the jury rejected it. They offer nothing new to suggest I take the extreme set of setting aside a jury verdict. Defendants claim Plaintiffs could have mitigated pursuant to ORS 24.150 which governs satisfaction of a judgment. First, Defendants ignore the distinction between voiding a judgment and satisfying a judgment. That difference may matter and it leaves unclear whether ORS 24.150 can even apply to this case. Next, even if the statute does apply, it notes "it shall be the responsibility of the judgment creditor to provide an executed satisfaction to this judgment debtor." OR. REV. STAT. ANN. § 24.150 (West). This directly contradicts the idea that Plaintiffs could have removed the lien themselves and fatally compromises Defendants' arguments.

iii. Punitive damages unwarranted

Defendants argue punitive damages were legally and factually improper. I reject the argument that they are factually improper. Plaintiffs presented sufficient evidence of Defendants' repeated refusal to remove the lien despite being informed of the damage it was doing to Plaintiffs' property. Based on these facts, the jury could have, and did, properly conclude punitive damages were appropriate.

At my request, both parties briefed the issue of whether punitive damages are allowed in slander of title cases. *See State v. Robertson*, 293 Or. 402 (1982). I need not reach the question of whether punitive damages are barred for slander of title actions because Defendants waived their objection by failing to raise the issue before trial.[4] See *Butler v. Halsey Dev., Inc.,* 262 Or.

---

[4] Defendants, in their supplemental briefing, resubmit their red-line edits to the jury instruction for punitive damages to show they properly objected to punitive damages. Far from establishing they objected to punitive damages, it shows Defendants considered the issue and asked only for a change in verbiage, rather than a complete bar to the question of punitive damages. At no point before the court's request did either side raise the issue of Art. 8 and punitive damages.

589, 591 (1972) (holding since no objection to [punitive damages] was made during the trial; therefore, the issue will not be considered); *State v. McDonnell*, 329 Or. 375, 987 P.2d 486 (1999); *see also*, *State v. Hunter*, 316 Or. 192, 199 (1993) (noting "rights, even of constitutional dimension, can be waived"). Defendants' failure to raise the issue at any point in time constitutes waiver.

      b. New Trial

The court may grant a motion for a new trial under Federal Rule of Civil Procedure 59 "if the verdict is contrary to the clear weight of the evidence, is based on evidence which is false, or to prevent a miscarriage of justice." *Silver Sage Partners v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001); *see also Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007) ("Historically recognized grounds [for a new trial under Rule 59] include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the moving party.") (internal quotation and citation omitted). The "district court may not grant a new trial simply because it would have arrived at a different verdict." *Silver Sage Partners,* 251 F.3d at 819. Rather, the "trial court must have a firm conviction that the jury has made a mistake." *Landes Constr. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1372 (9th Cir.1 987).

      i. Plaintiffs' Counsel's Comments during Opening Statements

Ms. Foster, in her opening statement, said in reference to Defendants' offer to remove the lien for payment: "That might work in the Land of Sopranos . . . here in Oregon, the Petersons were not willing to go that route." Defendants did not object at the time. I do not believe it changed the outcome of the trial nor do I believe the comments themselves to be sufficiently serious to warrant a new trial.

ii. Exhibits

Defendants object that I admitted written evidence of Mr. Horowitz's inflammatory statements. These statements came in because they were offered by Plaintiffs as exhibits at the pre-trial conference and Mr. Horowitz failed to object.

Defendants also object that the court's exhibit list includes an "Exhibit 96" which defense counsel claims never to have seen. Defense counsel is correct that Exhibit 96 was not disclosed before trial. When it was offered at trial, I asked if Defendants had any objection. At that time, Mr. Horowitz did not object. The exhibit in question is an email from Plaintiffs' New Jersey counsel asking Mr. Horowitz to remove the lien. Even if the admission of the exhibit were error, there was ample other evidence to show that Plaintiffs had asked Defendants to remove the lien. Indeed, Defendants never argued that they were unaware Plaintiffs wanted them to remove the lien. Defendants did not object to Exhibit 96 when it was offered and it is not prejudicial. It does not constitute grounds for a new trial.

c. Amended Judgment

Defendants object to the Amended Judgment because they claim it was done before the court reviewed their objections. The initial judgment was amended to include an order that Defendants remove the lien to remedy an inadvertent omission in the original judgment. Defendants have since removed the lien. The issue is moot, but Defendants claim the record would be unjust should the Amended Judgment be left without modification. Defendants, through this motion, have outlined their objections. There is nothing more this court need do.

II. Conclusion

Plaintiffs' Motion for Attorney Fees is GRANTED in the amount of $155,617 [123]. Plaintiffs' Motion to Certify a Question to the Supreme Court [146] is DENIED AS MOOT.

Plaintiffs' Amended Bill of Costs is GRANTED in part and DENIED in part [140]. Costs are awarded in the amount of $7,361.10. Plaintiff's original Bill of Costs [125] is DENIED AS MOOT.  Defendants' Motion for a Judgment Notwithstanding the Verdict, a New Trial, or an Amended Judgment [129] is DENIED.

DATED this   24th   day of February, 2016.

/s/ Michael W. Mosman          
MICHAEL W. MOSMAN
Chief United States District Judge